Zeitz, Harris & Moscowitz, of New York City (Saul L. Harris and William Roth, both of New York City, and Louis Witlin, of Brooklyn, N.Y., of counsel), for plaintiffs-appellants.

John F. X. McGohey, U. S. Atty., (Henry L. Glenn, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before AUGUSTUS N. HAND, CLARK, and WOODBURY, Circuit Judges.

**RUBIN et al. v. UNITED STATES.**

**No. 143, Docket 20850.**

**October Term, 1947.**

**Circuit Court of Appeals, Second Circuit.**

**April 5, 1948.**

WOODBURY, Circuit Judge.

The plaintiffs in a suit against the United States brought under 28 U.S.C.A. § 41(20) have taken this appeal from an order granting the defendant's motion for summary judgment and dismissing their complaint on the merits.

There is no dispute over the facts. They may be stated as follows: The plaintiffs, co-partners doing business in the City and State of New York as Novelty Products Company, entered into a contract with the Navy Department on December 27, 1944, under the terms of which they agreed to manufacture and deliver 500,000 camouflaged web tourniquets at a fixed price per unit estimated to amount in total to $53,350. They entered into the performance of their contract and had manufactured and delivered 209,436 tourniquets according to specifications, for which they had been paid the full contract price per unit, when the Government for its own convenience terminated the con-

tract effective August 22, 1945, as it admittedly had the right to do. Following termination, the plaintiffs, pursuant to § 16(f) of the contract, requested an equitable adjustment of the unit contract price for the 209,436 tourniquets which they had manufactured and delivered and for which they had been paid, on the ground that their unit cost had been estimated upon the manufacture of 500,000 tourniquets and as a result of termination their unit cost had been increased $.01519. The Government rejected their request on the ground that as a matter of law their claim was unwarranted. Thereafter the parties entered into a Supplemental Settlement Agreement under § 16(c) of the contract in which they agreed upon the amount to be paid to the plaintiffs by reason of the termination, and in which the plaintiffs released the defendant from all liability under the contract except for any right they might have under § 16(f) thereof. Subsequently they brought this suit to recover on their rejected claim.

The sole question at issue therefore is the meaning of § 16(f) of the contract which provides: "In the event that, prior to the determination of the final amount to be paid to the Contractor as in this Section provided, the Contractor shall file with the contracting officer a request in writing that an equitable adjustment should be made in the price or prices specified in the contract for the work not terminated by the Notice of Termination, the appropriate fair and reasonable adjustment shall be made in such price or prices." Specifically the question is whether the phrase "work not terminated by the Notice of Termination" refers to work already completed, delivered and paid for on the effective date of a notice of complete termination, or whether it refers only to work remaining to be completed after the effective date of a notice of partial termination. The court below adopted the Government's contention that the phrase referred to was intended to describe only work still to be finished and delivered under a contract after a partial termination thereof, and we entirely agree.

Certainly the words, "work not terminated by the Notice of Termination" are inapt and awkward to describe work already manufactured, delivered and paid for. It could hardly be supposed that they would be resorted to for that purpose when readier phrases are available. And this supposition is confirmed by the fact that in another part of the contract, in the same section indeed (§ 16(d) (1)), the clear and compact phrase "completed articles" is used to refer to work finished before termination.

Further confirmation of the District Court's and our view, if further confirmation be needed, is to be found in other sections of the contract in which the term "work terminated" is used to refer to unfinished goods not to be completed after a Notice of Termination (§§ 16(b) (3), 16(b) (6) (i), 16(d) (2)), and in still other sections in which the words "work not terminated" themselves, or some equivalent words as "such portions of the work under the contract as may not be terminated" (§ 16(b) (2)) are used to refer to work which remains to be completed under a notice of partial termination after service thereof. See §§ 15(b) (3), 15(b) (4), 16(b) (8). Furthermore our interpretation of the crucial phrase accords with the administrative interpretation of it in Gardner & Son v. War Department, 3 C.C.F. 1005.

In view of the foregoing we see no opportunity for resort to the principle that a contract if ambiguous should be construed against the party who drew it, as the plaintiffs urge in support of their position, and their cry that the Government's, the District Court's, and our construction of the phrase is inequitable rings with a hollow sound in view of the detailed provisions for the payment of allowances to contractors to compensate them for a great variety of such losses they might incur in the event of termination (§ 16(c) and (d)), and by the apparently liberal construction given to this section in the instant case since it appears from the Supplemental Settlement Agreement entered into between the parties, which was introduced in evidence, that the plaintiffs were paid approximately four-fifths of the total contract price for actually manufacturing and delivering only approximately two-fifths of the articles contracted for.

The judgment of the District Court is affirmed.